1   **WO**                                                                          HJ

2

3

4

5

6                 IN THE UNITED STATES DISTRICT COURT

7                     FOR THE DISTRICT OF ARIZONA

8

9   David E. Seitz and Microtherm, Inc.,      )   No. CV 06-2537-PHX-EHC
                                              )
10              Plaintiff,                     )   **ORDER**
                                              )
11   vs.                                       )
                                              )
12                                             )
     Rheem Manufacturing Company, Water)
13   Heater Innovations, Inc. d/b/a Marathon)
     Water Heaters,                            )
14                                             )
                Defendants.                    )
15                                             )
                                              )
16   _____)

17

18          Before the Court is Defendant Rheem Manufacturing's ("Defendant Rheem") "Motion

19   to Dismiss Plaintiffs' Second Amended Complaint."  (Dkt. 31).  Defendant Water Heater

20   Innovation, Inc. d/b/a/ Marathon Water Heaters ("Defendant Marathon") filed a "Joinder in

21   Defendant Rheem's Motion to Dismiss Plaintiffs' Second Amended Complaint and Separate

22   Motion to Dismiss Plaintiff's Second Amended Complaint."  (Dkt. 30).  The motions are

23   fully briefed and the Court finds this matter suitable for decision without oral argument.  For

24   the reasons set forth herein, Defendants' motion is granted in part, and denied in part.[1]

25

26

27   _____

28          [1]Plaintiffs' Second, Fourth, Eight and Ninth claims for relief will be dismissed as to
     Defendant Marathon pursuant to an agreement between the parties.  (See Dkt. 38).

1   **I.      Procedural Background**

2          Plaintiffs David E. Seitz ("Plaintiff Seitz") and Microtherm, Inc. ("Plaintiff

3   Microtherm") (collectively "Plaintiffs") filed a Complaint against Defendants Rheem and

4   Marathon on October 23, 2006, (Dkt. 1), which was amended as of right on December 5,

5   2006. (Dkt. 11). Defendants Rheem and Marathon filed a Motion to Dismiss the First

6   Amended Complaint on February 2, 2007. (Dkt. 18). Plaintiffs filed a  Response to

7   Defendants' first motion to dismiss and requested leave to file a Second Amended

8   Complaint. (Dkt. 21). On June 14, 2007, the Court granted Plaintiff's request for leave to

9   file a Second Amended Complaint and denied without prejudice Defendants' motion to

10  dismiss. (Dkt. 25). Plaintiffs' timely filed a Second Amended Complaint on July 11, 2007,

11  which is the subject of the pending motions to dismiss.  (Dkt. 26).

12  **II.     Factual Allegations**

13         Plaintiff Seitz is the President and CEO of Microtherm, Inc. (Dkt. 26, ¶ 1). "Mr. Seitz

14  invented the tankless water heater and holds four (4) U.S. patents and a number of foreign

15  patents for the electric tankless water heater."  (Dkt. 26, ¶ 1). Plaintiff Microtherm."is a

16  manufacturer of electric tankless water heaters and conducts business throughout the United

17  States." (Dkt. 26, ¶ 2). Defendant Rheem manufactures conventional tank water heaters.

18  (Dkt. 26, ¶¶ 3, 10). Defendant Marathon is a wholly-owned subsidiary of Rheem and is a

19  seller of Rheem-manufactured conventional water heaters.  (Dkt. 26, ¶ 11). "Plaintiffs have

20  designed, manufactured and are marketing an electronically controlled tankless water heater

21  which is about the size of a briefcase and can be mounted on a wall virtually anywhere it is

22  needed." (Dkt. 26, ¶ 9). Plaintiffs allege that this tankless water heater "provides an endless

23  supply of hot water, has a service life far in excess of conventional hot water heaters, and is

24  environmentally friendly."  (Dkt. 26, ¶ 9).

25         **A.   The Watts Contract**

26         On December 13, 2002, Plaintiff Microtherm entered a contract with Watts Water

27  Technologies ("Watts") whereby Watts agreed to buy a minimum number of Microtherm

28  electric tankless water heaters annually and re-sell these units under their own brand name.

1   (Dkt. 26, ¶¶ 13, 15).  Pursuant to the contract, Watts ordered and Microtherm delivered 1,500

2   units of the Microtherm electric tankless water heaters.  (Dkt. 26, ¶ 16).  Plaintiff alleges that

3   both parties to the contract intended that it would act as a "catalyst for Plaintiffs' business

4   plan and would provide nationwide access to Microtherm manufactured electric tankless

5   water heaters in many large business."  (Dkt. 26, ¶ 17).  Plaintiffs allege that once

6   "Microtherm's electric tankless water heaters were marketed by Watts under the Watts name,

7   Microtherm reasonably anticipated that tens of thousands of Microtherm manufactured

8   electric tankless water heaters would sell."  (Dkt. 26, ¶ 18).  To support its decision to

9   contract with Microtherm, Watts conducted testing of Microtherm's electric tankless water

10  heaters, which "proved that the Microtherm manufactured electric tankless water heaters

11  were superior to the other tested products."  (Dkt. 26, ¶ 19).

12          On October 21, 2004, the Group Vice President of Watts sent a letter to Microtherm

13  stating in part:

14          Reference is made to our recent telephone discussions in which I informed you that
            we were not going to be able to pursue retail placement of your product due to
15          requests from tank water heater manufacturers that Watts not enter the marketplace.
            As you know, we do a great deal of business with several of these manufacturers on
16          our pressure relief valves.

17  (Dkt. 26, ¶ 22).  "In July, 2006, Microtherm learned that Defendants were the tank water

18  heater manufacturer(s) that were pressuring Watts to end its relationship with Microtherm."

19  (Dkt. 26, ¶ 23).  Plaintiffs allege that "Defendants intentionally and purposefully entered into

20  a conspiracy and/or agreement with Watts to reduce competition in the water heater market

21  in the United States."  (Dkt. 26, ¶ 25).

22      **B.  Defendants' Alleged Defamatory Statements**

23          Defendant Rheem "established its own line of gas powered tankless water heaters"

24  in 2005.  (Dkt. 26, ¶ 29).  Plaintiffs allege that Defendants have misled the "general public

25  as wells as the water heater industry about the performance and reliability of electric tankless

26  water heaters in general, and the Microtherm technology in particular."  (Dkt. 26, ¶ 30).

27  Specifically, Plaintiffs cite a "2006 advertisement / information circular by Marathon...titled

28  'Tankless Electric Water Heaters...the rest of the story.'" (Dkt. 26, ¶ 30a).  This publication

1  allegedly misrepresented the "suitability and performance of electric tankless water heaters,"

2  stating:

3       •    Tankless electric water heaters lack "longevity" due to water purity issues;
     •    Tankless electric water heaters are not covered by a sufficient warranty;

4       •    Tankless electric water heaters place an "uncontrollable" burden on the utility and its customers;

5       •    Tankless electric water heaters require "significant wiring upgrades" in addition to the cost of the heater itself;

6       •    Servicing a tankless electric water heater is either cost prohibitive or impossible; and

7       •    Twice the installed costs of a Marathon, more service (if you can find it), short

8           life, and no savings over a Marathon – some deal!  Wouldn't your customers prefer cost effective and hassle free water heating, with a Lifetime Warranty Marathon?  Better for you and better for your utility.

9

10  (Dkt. 26, ¶ 30a).  Plaintiff's allege that "Defendants knowingly and intentionally published

11  this false, misleading and deceptive propaganda as part of an overall smear campaign that

12  dates back several years."  (Dkt. 26, ¶ 30a).

13         Plaintiff further alleges that:

14      [D]efendants have held and continue to hold "seminars" with utilities and other powerful industry groups throughout the country whereby [D]efendants warn their

15      audience of the mythical "issues" posed by electric tankless water heaters.  At these industry meetings, [D]efendants knowingly and intentionally provide literature

16      containing false, misleading and/or deceptive data to support [D]efendants' disingenuous claims against electric tankless water heaters.  For example, one such

17      article, "Tankless Water Heaters are Brutal on the Grid When Popularized," paints an untrue doomsday scenario for utility companies in the event that electric tankless

18      water heaters become prevalent.

19  (Dkt. 26, ¶ 30b).  Plaintiffs allege that Defendants sponsored publication of this article,

20  and/or provided the arguments and substance of the article, and/or the authors were agents

21  of Defendants, and/or the damaging substance in the article has its genesis in Defendants'

22  illegal and tortious conduct.  (Dkt. 26, ¶ 30b).  Microtherm claims that it learned about

23  Defendants' advertisements and statement on or after July 11, 2006.  (Dkt. 26, ¶ 31).

24      **C.  Claims for Relief**

25         The Second Amended Complaint sets forth nine claims for relief.  (Dkt. 26).  The First

26  Claim for Relief is under the Lanham Act, 15 U.S.C. § 1125, for Defendants' alleged

27  dissemination of false information about electric tankless water heaters.  (Dkt. 26, ¶¶ 35-38).

28  The Second Claim for Relief is under the Sherman Antitrust Act, 15 U.S.C. § 1, for

Defendants alleged actions in restraint of trade that purportedly caused Watts not to pursue retail placement of Microtherm manufactured electric tankless water heaters. (Dkt. 26, ¶¶ 39-44). The Third Claim for Relief is under the Sherman Antitrust Act, 15 U.S.C. § 2, for Defendants' alleged attempts to monopolize the water heater market in the United States. (Dkt. 26, ¶¶ 45-48). The Fourth Claim for Relief is under the Clayton Act, 15 U.S.C. § 14, for Defendants' alleged conditional contracting with distributors like Watts, which Plaintiffs allege have the effect of lessening competition in the water heater market. (Dkt. 26, ¶¶ 49-51). The Fifth Claim for Relief is under the Arizona Antitrust Act, A.R.S. § 44-1401 et seq. for Defendants' alleged contract, combination or conspiracy to restrain or monopolize trade or commerce. (Dkt. 26, ¶¶ 52-54). The Sixth Claim for Relief is for Product Disparagement and Injurious Falsehood for Defendants' alleged knowing publication of false statements. (Dkt. 26, ¶¶ 55-57). The Seventh Claim for Relief is for Commercial Defamation for Defendants' alleged false statements about Microtherm and electric tankless water heaters. (Dkt. 26, ¶¶ 58-61). The Eighth Claim for Relief is for Intentional Interference with Performance of a Contract by a Third Person for Defendants' alleged interference with the Microtherm and Watts contract. (Dkt. 26, ¶¶ 62-64). The Ninth Claim for Relief is for Intentional Interference with Another's Performance of His Own Contract for Defendants' alleged interference with Microtherm's contractual obligations. (Dkt. 26, ¶¶ 65-66). The Tenth Claim for Relief is for Intentional Interference with Prospective Contractual Relations for Defendants' alleged interference with Microtherm's prospective contractual relations and/or economic advantage. (Dkt. 26, ¶¶ 67-68).

**III.    Motion to Dismiss Standard**

The Supreme Court recently retired the oft-quoted <u>Conley v. Gibson</u>[2] language that

---

[2]<u>Conley v. Gibson</u>, 355 U.S. 41 (1957). In <u>Twombly</u>, the Court stated that the "no set of facts" language from <u>Conley</u> had "been questioned, criticized, and explained away long enough[,]" and that "[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard[.]" <u>See</u> <u>Twombly</u>, 127 S.Ct. at 1969.

1   long-defined the standard district courts were to apply when deciding motions to dismiss.

2   See Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1968 (2007).  The  Court, however,

3   reiterated that the accepted pleading standard remains unchanged: "once a claim has been

4   stated adequately, it may be supported by showing any set of facts consistent with the

5   allegations in the complaint."  Twombly, 127 S.Ct. at 1968.  The Court further reminded

6   district courts weighing a motion to dismiss to ask "not whether a plaintiff will ultimately

7   prevail but whether the claimant is entitled to offer evidence to support the claims."

8   Twombly, 127 S.Ct. at 1969 n.8 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct.

9   1683, 1686 (1974)).  "[A] well-pleaded complaint may proceed even if it strikes a savvy

10   judge that actual proof of those facts is improbable, and "that a recovery is very remote and

11   unlikely."  Twombly, 127 S.Ct. at 1965.

12   **IV.   Plaintiff's Fourth Claim for Relief Under the Clayton Act**

13          Defendants contend that Plaintiffs' Fourth Claim for Relief should be dismissed

14   because  "Section 3 of the Clayton Act applies only against sellers – not purchasers – who

15   allegedly attempt to improperly condition the sale of goods on an agreement by the buyer not

16   to deal with a competitor."  (Dkt. 31).  Specifically, the alleged agreement between Rheem

17   and Watts that forms the basis of Plaintiffs' Clayton Act claim is a contract for the purchase

18   of parts by Rheem from Watts, making Rheem the *purchaser*, not the seller according to

19   Defendants.  Plaintiffs, in their response, do not contend that Section 3 of the Clayton Act

20   should apply to purchasers.  Rather, Plaintiffs insist that the Court must take Plaintiffs'

21   assertion that "Defendants are manufacturers and sellers of conventional tank water heaters"

22   as true for the purposes of deciding a motion to dismiss.  (Dkt. 36).  Defendants, in their

23   reply, point out that Plaintiffs have not alleged that Rheem or Marathon improperly

24   conditioned the *sale* of its water heaters on illicit agreements with its buyers and that the fact

25   that Rheem and Marathon happen to sell water heaters has no relevance to the Clayton Act

26   claim.

27          By its express language, Section 3 of the Clayton Act "defines liability in terms of a

28   person who makes a sale or contracts for sale and nowhere provides for liability of the

buyer." See McGuire v. Columbia Broadcasting System, Inc., 399 F.2d 902, 906 (9th Cir. 1968). Specifically, Section 3 provides that "[i]t shall be unlawful for any person engaged in commerce, in the course of such commerce...to make a *sale or contract for sale* of goods...or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement or understanding that the...*purchaser thereof* shall not use or deal in the goods...of a competitor...."  15 U.S.C. § 14 (emphasis added).  Defendants cite to no authority that would allow a Section 3 claim to be brought against a *buyer* of goods, and the Court has not found such an authority.

Thus, the only issue is whether Plaintiffs' allegations are sufficient to support a Section 3 claim.  Plaintiffs' Clayton Act claim is based upon the factual allegation that Watts did not pursue retail placement of Plaintiffs' electric tankless water heaters because Watts was pressured by Defendants.  The letter cited by Plaintiffs in support of this allegation states that Watts was not pursuing retail placement "due to requests from tank water heater manufacturers that Watts not enter the marketplace." (Dkt. 26, ¶ 22, Ex. B).  The letter goes on to state that "[a]s you know, we do a great deal of business with several of these manufacturers on our pressure relief valves." (Dkt. 26, ¶ 22, Ex. B).  It is clear from Watt's letter to Plaintiffs that Rheem is the buyer and Watts is the seller of its pressure relief valves. Plaintiff does not allege in this section or elsewhere in their Second Amended Complaint that Defendants were sellers to Watts.  Thus, even if Plaintiffs' general allegation that Defendants are sellers of tank water heaters is proven true, this fact is not sufficient to support a claim based on Section 3, which requires Defendants to be *sellers* to Watts.

Accordingly, Plaintiffs have failed to state a claim for relief under the Clayton Act and this claim will be dismissed.

## V.    Plaintiffs' Commercial Defamation Claim

Defendants next contend that Plaintiffs' Seventh Claim for Commercial Defamation fails because the alleged statements are not directed at Plaintiffs and do not impugn Plaintiffs' honesty, integrity, virtue or reputation. (Dkt. 31).  "To be actionable as a matter of law, defamatory statements must be published in such a manner that they reasonably relate

1   to specific individuals." <u>Hansen v. Stoll</u>, 639 P.2d 1236, 1240 (App. 1981).  It is not

2   necessary for the defamatory statement to mention the plaintiff by name so long as there is

3   such a description of or referring to the plaintiff that those who hear or read the statement

4   understand the plaintiff to be the subject of the statement.  <u>See</u> <u>Stoll</u>, 639 P.2d at 1240; <u>see</u>

5   <u>also</u> Restatement (Second) of Torts § 564, comment b (1977).

6       Defendants contend that Plaintiffs' defamation claim fails because the alleged

7   statements do not impugn Plaintiffs' financial integrity or business ethics, but simply reflect

8   upon the quality of Plaintiffs' *products*.  <u>See</u> <u>Turner v. Devlin</u>, 174 Ariz. 201, 203-204 (Ariz.

9   1993) ("To be defamatory, a publication must be false and must bring the defamed person

10  into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue,

11  or reputation.").  "Although a corporation may maintain an action for libel, it has no personal

12  reputation and may be libeled only by imputation about its financial soundness or business

13  ethics."[3]  <u>Golden Palace, Inc. v. National Broadcasting Co.</u>, 386 F. Supp. 107, 109 (D.D.C.

14  _____

15      [3]The Ninth Circuit has discussed prior illustrative cases where imputations have been
    held libelous against corporations.  <u>See</u> <u>Golden N. Airways</u>, 218 F.2d at 624-625 (authorities
16  discussed therein).  <u>See</u> <u>Den Norske Ameriekalinje Actiesselskabet v. Sun Printing &
    Publishing Ass'n</u>, 226 N.Y. 1 (N.Y. 1919) (Accusing a company of fraudulently and illegally
17  misrepresenting the nature of the cargo contained in its ship by falsifying the manifest and
    other documents and that it was engaged in violating the laws of this country by conveying,
18  under circumstances of concealment and misrepresentation, a large supply of copper to
    Norway, whence it could be easily transported to the Central Powers with which we were
19  then at war, and which in accordance with general knowledge were much in need of the
    material.);  <u>Finnish Temperance Society v. Finnish Socialistic Pub. Co.</u>, 130 N.E. 845, 846
20  (Mass. 1921) (Publication of two anonymous letters stating of the plaintiff, a temperance
    society, that its leaders are "scabs, men who have been in the reformatory, men who have run
21  away to this country, wife deserters",that "the plaintiff profits through conducting gambling"
    etc.);  <u>Axton Fisher Tobacco Co. v. Evening Post Co.</u>, 169 Ky. 64 (Ky. 1916) (Charge that
22  a corporation placed a negro foreman as boss over white girls; and that it was on the unfair
    list, when the corporation maintained a union shop and had union labor patronage.);
23  <u>Pennsylvania Iron Works Co. v. Henry Voght Mach. Co.</u>, 139 Ky. 497 (Ky. 1906) (Charge
    that a company is a secondhand dealer, puts in inferior work, has a scab establishment and
24  has not a mechanic in its place.);  <u>Gross Coal Co. v. Rose</u>, 105 N.W. 225, 226 (Wis. 1905)
25  (Charging that a coal dealer, at the time of a coal famine, when the people were suffering for
    want of fuel, not only charged extortionate prices for its coal, but actually refused to sell coal,
26  even at such extortionate prices, to people suffering from sickness.).

27

28

1   1974); *cf.* Golden N. Airways v. Tanana Publishing Co., 218 F.2d 612, 624 (9th Cir. 1954)

2   ("Since a corporation has no character to be affected by libel and no feelings to be injured,

3   an article to be libelous as to a corporation must have a tendency to directly affect its credit

4   or property or cause it pecuniary injury.").

5       Arizona courts have drawn a distinction between false statements directed at a

6   plaintiff's *product* and those statements directed at a plaintiff itself.  See Fillmore v.

7   Maricopa Water Processing Sys., 120 P.3d 697, 705 (Ariz. Ct. App. 2005) (In contrast to

8   [injurious falsehood and tortious business interference] in which general statements regarding

9   a plaintiff's business or product may give rise to a claim for relief, a claim for defamation

10  must be based on a statement that is "of and concerning" the plaintiff himself.") (citing Stoll,

11  130 Ariz.at 458 (burden on plaintiff to show publication "of and concerning" him) (citing

12  *inter alia* RESTATEMENT §§ 564, 617)); Modla v. Parker, 17 Ariz. App. 54, 56-57, 495 P.2d

13  494, 496-97 (1972) (to constitute slander per se in business context, plaintiff must show

14  defamation "of and concerning" plaintiff's personal business practices).

15      The Second Amended Complaint alleges that Defendants made various false

16  statements about electric tankless water heaters without mentioning Plaintiffs directly.

17  Statements about a type of product alone are not sufficient to support a claim for defamation

18  against a manufacturer of such products.  See Fillmore., 120 P.3d at 705.[4]  As discussed in

19  the following section, however, the allegations offered in support of Plaintiffs' commercial

20  defamation claim may be offered in support of a claim for product disparagement.

21      Accordingly, Plaintiffs have failed to state a claim for commercial defamation and this

22  claim will be dismissed.

23  **VI.    Plaintiffs' Product Disparagement/Injurious Falsehood Claim**

24      Defendants also seek dismissal of Plaintiffs' product disparagement/injurious

25

26      [4]Defendants bifurcate their argument into two theories: (1) the alleged statements are
    not directed at Plaintiffs; and (2) the alleged statements do not impugn Plaintiffs' character.
27  Both arguments relate to whether or not the alleged statements are "of and concerning"
    Plaintiffs.
28

1    falsehood claim on the same grounds, and for the additional reason that Plaintiffs did not

2    seek leave to amend to add such a claim.  The tort of product disparagement falls within the

3    broader actions of defamation and injurious falsehood.[5]   Product disparagement occurs

4    where "[t]here is evidence that the defendant made false, misleading, and disparaging

5    remarks about the plaintiff's *products*."  See 1-2 JURY INSTRUCTIONS IN COMMERCIAL

6    LITIGATION § 2.28 (emphasis added); see also Fillmore., 120 P.3d at 703 (discussing the tort

7    in Arizona under facts remarkably similar to the facts of this case);  Texas Beef Group v.

8    Winfrey, 11 F. Supp. 2d 858, 864 (D. Tex. 1998) ("The action for defamation is to protect

9    the personal reputation of the injured party as distinguished from an action for disparagement

10   which is to protect the economic interest of the injured party against pecuniary loss.").

11          Defendants further contend that the alleged statements do not pertain to Plaintiffs'

12   products specifically, but to electric tankless water heaters generally.  See supra.  The Second

13   Amended Complaint does not allege that Plaintiffs are mentioned by name, but it does allege

14   that Plaintiffs are the inventors of the electric tankless water heater.  Considering Plaintiffs'

15   status as the inventor of the electric tankless water heater, reasonable minds could find that

16   the general statements about electric tankless water heaters were directed at Plaintiffs'

17   products.  Thus, the claim is plead adequately enough to survive a motion to dismiss.

18   Whether or not Plaintiff can ultimately prove that the statements referred to Plaintiffs'

19   products is a question for another day.  See, e.g., Texas Beef Group v. Winfrey, 11 F. Supp.

20   2d 858 (N.D. Tex. 1998) (*on summary judgment*, a small group of Texas cattle ranchers were

21   unable to demonstrate that disparaging statements made about the cattle industry as a whole

22   were "of and concerning" them, where the *evidence in the record* demonstrated that there

23   were "about a million" cattlemen in the United States).

24

25

26          [5]"In the modern law the tort of 'injurious falsehood' is the general umbrella term for
     a collection of torts such as … 'product disparagement' or 'trade libel'… ."  See Fillmore v.
27   Maricopa Water Processing Sys., 120 P.3d 697, 703 (Ariz. Ct. App. 2005) (quoting from
     Rodney A. Smolla, 2 Law of Defamation § 11:34, at 11-44).

28

1    As a practical matter, Plaintiffs' Seventh Claim for Relief for Commercial Defamation
2    could simply be re-labeled as one for Product Disparagement or Injurious Falsehood.
3    Because Plaintiffs' product disparagement claim arises out of the same occurrences as the
4    commercial defamation claim, there is no prejudice in allowing this newly-added claim to
5    proceed. See Fillmore, 120 P.3d at 703 ("The theories of injurious falsehood and defamation
6    tend to overlap "particularly in cases of disparagement of the plaintiff's business or product.")
7    (quoting RESTATEMENT § 623A, cmt. g).  The alleged disparaging statements regarding
8    electric tankless water heaters could satisfy some requirements of both theories.  Thus, the
9    Sixth and Seventh Claims can be combined and recast simply as a single claim for product
10   disparagement/injurious falsehood.

11   **VII.    Plaintiff's Lanham Act Claim**

12   Defendants also contend that the same allegedly false statements regarding electric
13   tankless water heaters and tankless water heaters generally are insufficient to support a
14   Lanham Act claim because these alleged statements are not directed at Plaintiffs.  Section 43
15   of the Lanham Act provides liability for a person who "misrepresents the nature,
16   characteristics, qualities, or geographic origin of his or her or another person's goods,
17   services, or commercial activities."  15 U.S.C. § 1125(a)(1)(B).  While it may eventually be
18   proven that the alleged statements were not directed at Plaintiffs' products, that issue is not
19   well-suited for disposition at the motion to dismiss stage.  For the same reasons discussed
20   above with regard to Plaintiffs' product disparagement claim, Plaintiffs will be allowed to
21   proceed with their Lanham Act claim and offer evidence in support thereof.

22   **VIII.   Plaintiffs' Eight and Ninth Claims for Relief for Intentional Interference With**
23   **Contract**

24   Finally, Defendants contend that Plaintiffs' Eight and Ninth Claims for Intentional
25   Interference with Contract fail because the contract expired by its own terms, and thus, there
26   could be no allegation of breach.  Even if there was a breach, Defendants maintain that the
27
28

1    breach must have occurred prior to May of 2004,[6] when the contract expired by its own

2    terms.  If a breach occurred prior to May 2004, Defendants contend that the applicable two-

3    year statute of limitations bars any claim for intentional interference.  Plaintiffs' make two

4    arguments in response.  First, they point out that the Second Amended Complaint alleges that

5    Defendants induced or caused Watts "not to perform the contract."  Plaintiffs' maintain that

6    this is an allegation of breach even though it does not use the word "breach."  Second,

7    Plaintiffs contend that there is no statute of limitations problem because the Second Amended

8    Complaint alleges that Plaintiffs did not learn until July 2006, that Defendants "were the tank

9    water heater manufacturer(s) that were pressuring Watts to end its relationship with

10   Microtherm." (Dkt. 26, ¶ 23).

11          The tort of intentional interference with contractual relations requires a plaintiff to

12   prove: (1) the existence of a valid contractual relationship, (2) knowledge of the relationship

13   on the part of the interferor, (3) intentional interference inducing or causing a breach, (4)

14   resultant damage to the party whose relationship has been disrupted, and (5) that the

15   defendant acted improperly.  Safeway Ins. Co. v. Guerrero, 210 Ariz. 5, 10 (Ariz. 2005).

16   Plaintiffs and Defendants agree that "breach" is an essential element of the claim.  The

17   Second Amended Complaint states in plain language that Defendants interfered by "inducing

18   or otherwise causing Watts not to perform the contract." (Dkt. 5, ¶ 63).  Thus, it appears that

19   the Second Amended Complaint adequately alleges that a breach occurred.

20          Defendants point out in their Reply that the remainder of the allegations in the Second

21   Amended Complaint do not reference an alleged breach.  Moreover, they contend that even

22   if the allegations mention a breach, such allegations would be contradicted by the terms of

23   the Watts contract, which is attached as an exhibit to the Second Amended Complaint.  The

24   Court is "not required to accept as true conclusory allegations which are contradicted by

25

26          [6]In their Reply, Defendants state that the contract expired in June 2004.  By the
     Court's calculations of 18 months from December 12, 2003, the agreement would have
27   expired in June rather than May.  The distinction is not important for the purposes of ruling
     on Defendants' motions.
28

- 12 -

1   documents referred to in the complaint."  See Sprewell v. Golden State Warriors, 266 F.3d

2   979, 988 (9th Cir. 2001) (arbitration award attached to the plaintiff's complaint contained

3   extensive factual allegations that fatally undermined the plaintiff's claim).   Nonetheless, it

4   would be premature at the motion to dismiss stage for the Court to delve into contractual

5   interpretation of the Watts agreement checking each term of the contract against each factual

6   allegation in the complaint.  Plaintiffs' allegation that a breach occurred is sufficient to allow

7   Plaintiffs to offer evidence in support of their claim.

8            The Court now turns to Defendants' argument that if a breach occurred, it must have

9   occurred prior to the expiration of the contract in May or June 2004, rendering any claim for

10  intentional interference barred by the statute of limitations.  In Arizona, claims for wrongful

11  interference with contract have a two-year statute of limitations.  See A.R.S. § 12-542; Clark

12  v. Airesearch Mfg. Co., 138 Ariz. 240, 244 (Ariz. Ct. App. 1983).   While a statute of

13  limitations defense may be raised by a motion to dismiss, a "complaint cannot be dismissed

14  unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish

15  the timeliness of the claim."  AdVnt Biotechnologies, LLC v. Bohannon, 2007 U.S. Dist.

16  LEXIS 47160 (D. Ariz. 2007).  Because Plaintiffs alleged that they did not discover until

17  July 2006, that Defendants were the tank water heater manufacturers that were pressuring

18  Watts to end its relationship with Microtherm, the Court cannot conclude that their claims

19  were untimely when filed several months later in December 2006.   See AdVnt

20  Biotechnologies, LLC, 2007 U.S. Dist. LEXIS 47160 at 3-4 (motion to dismiss denied where

21  the complaint specifically alleged *discovery* of the defendant's wrongful actions less than two

22  years before the complaint was filed).

23            Accordingly,

24            **IT IS ORDERED** granting in part, and denying in part Defendants' Motion to

25  Dismiss (Dkt. 31).

26

27

28

1    **IT IS FURTHER ORDERED** dismissing Plaintiffs' Fourth and Seventh Claims for

2 Relief against all Defendants.   The allegations in support of the Seventh Claim for

3 Commercial Defamation may be combined with Plaintiffs' Sixth Claim for Product

4 Disparagement/Injurious Falsehood.

5    **IT IS FURTHER ORDERED** dismissing Plaintiffs' Second, Eight, and Ninth

6 Claims for Relief against Defendant Marathon only.

7    DATED this 11th day of February, 2008.

8

9

10

11 _____

12                 Earl H. Carroll
                   United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28